**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARTIN L. MILES,

      Petitioner,               Civil No. 2:14-CV-12131
                                HONORABLE ARTHUR J. TARNOW
v.                          UNITED STATES DISTRICT JUDGE

GEORGE STEPHENSON,

      Respondent,

_____/

## OPINION AND ORDER SUMMARILY DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Martin L. Miles, ("Petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree felony murder, unlawfully driving away an automobile, felony firearm, and carrying a dangerous weapon with unlawful intent.  Respondent filed a renwed motion to dismiss the petition for writ of habeas corpus, contending that petitioner failed to comply with the statute of limitations contained in 28 U.S.C. § 2244(d)(1). [1]  For the reasons stated below, petitioner's application for a writ of habeas corpus is **SUMMARILY DISMISSED**.

_____

     [1] Respondent originally filed a motion for summary judgment on July 30, 2014 (Doc. # 8) which was never addressed because the petition was held in abeyance to permit petitioner to return to the state courts to exhaust additional claims.

## I. Background

Petitioner was convicted following a jury trial in the Macomb County Circuit Court.

Direct review of petitioner's conviction ended in the Michigan courts on October 4, 1988, when the Michigan Supreme Court denied petitioner leave to appeal following the affirmance of his conviction on his appeal of right by the Michigan Court of Appeals. *People v. Miles,* No. 82689 (Mich.Sup.Ct. Oct. 4, 1988).

On March 30, 2012, petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Miles,* No. 85-743-FC (Macomb Cty. Cir. Ct., Apr. 25, 2012).  After the Michigan Court of Appeals denied petitioner leave to appeal, *See People v. Miles,* No. 310997 (Mich.Ct.App. Apr. 17, 2013), post-conviction review of the case ended on July 30, 2013, when the Michigan Supreme Court denied petitioner's post-conviction appeal. *People v. Miles,* 494 Mich. 884, 834 N.W. 2d 493 (2013).

Petitioner signed and dated his original habeas petition on May 20, 2014. [2]

On October 24, 2014, this Court granted petitioner's motion to hold the petition in abeyance so that he could return to the state courts and file a second post-conviction motion for relief from judgment. *Miles v. Bergh*, No.

_____

[2]  Under the prison mailbox rule, this Court will assume that petitioner actually filed his habeas petition on May 20, 2014, the date that it was signed and dated. *See Towns v. U.S.,* 190 F. 3d 468, 469 (6th Cir. 1999).

2

2:14-CV-12131, 2014 WL 5473196 (E.D. Mich. Oct. 24, 2014).

Petitioner returned to the state courts and filed a second post-conviction motion for relief from judgment, which was denied. *People v. Miles,* No. 1985-0743-FC (Macomb Cty.Cir.Ct. Jan. 7, 2015).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Miles,* No. 325826 (Mich.Ct.App. May 4, 2015); *lv. den.* 499 Mich. 966, 880 N.W.2d 549 (2016).

On August 29, 2016, this Court lifted the stay, amended the caption, and permitted petitioner to file an amended habeas petition raising additional claims. *Miles v. Stephenson*, No. 2:14-CV-12131, 2016 WL 4502437 (E.D. Mich. Aug. 29, 2016).

## II.  Discussion

Respondent filed a motion to dismiss the petition for writ of habeas corpus on the ground that the petition was not filed in compliance with the statute of limitations.  In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. New York*, 186 F.3d 243, 250 (2d Cir.1999); *See also Cooey v. Strickland,* 479 F. 3d 412, 415-16 (6th Cir. 2007).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one year statute of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court.  The one year statute of limitation shall run from the latest of:

3

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Although not jurisdictional, the AEDPA's one year limitations period "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *See Akrawi v. Booker,* 572 F. 3d 252, 260 (6th Cir. 2009). A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. *See Holloway v. Jones,* 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

Petitioner's direct appeal of his conviction ended when the Michigan Supreme Court denied petitioner leave to appeal on October 4, 1988. Petitioner's conviction would become final, for the purposes of the AEDPA's limitations period, on the date that the 90 day time period for seeking certiorari with the U.S. Supreme Court expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Petitioner's judgment therefore became final on January 3, 1989, when he failed to file a petition for writ of certiorari with the U.S. Supreme Court. *Holloway*, 166

4

F. Supp. 2d at 1188.  Because petitioner's conviction became final prior to the April 24, 1996 enactment date of the AEDPA, petitioner had a one year grace period from this date to timely file a petition for habeas relief with the federal court. *See Israfil v. Russell*, 276 F. 3d 768, 771 (6th Cir. 2001).  Absent state collateral review, petitioner would have been required to file his petition for writ of habeas corpus with this Court no later than April 24, 1997 in order for the petition to be timely filed. *See Corbin v. Straub,* 156 F. Supp. 2d 833, 836 (E.D. Mich. 2001).

Petitioner filed his post-conviction motion for relief from judgment on March 30, 2012, long after the one year limitations period had already expired.  A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period pursuant to 28 U.S.C. § 2244(d)(2) because there is no period remaining to be tolled. *See Jurado v. Burt*, 337 F. 3d 638, 641 (6th Cir. 2003); *see also Hargrove v. Brigano*, 300 F. 3d 717, 718, n. 1 (6th Cir. 2002). Petitioner's second motion for relief from judgment which was also filed in the state court after the expiration of limitations period likewise did not toll the limitations period. *See Parker v. Renico,* 105 F. App'x. 16, 18 (6th Cir. 2004).

Petitioner claims that he has newly discovered evidence of a police report that refers to a statement made by Mr. Albert F. Brozowski, one of the murder victim's neighbors, in which the witness informed the police that he saw a white male driving away in the murder victim's Cadillac.  Petitioner claims that Mr.

5

Brozowski's statement exculpates him of the murder because he is African-American.  Petitioner claims in in his reply brief to the initial motion for summary judgment that he did not discover this police report until September of 2011. [3]

Pursuant to 28 U.S.C.§ 2244(d)(1)(D), the AEDPA's one year limitations period begins to run from the date upon which the factual predicate for a claim could have been discovered through due diligence by the habeas petitioner. *See Ali v. Tennessee Board of Pardon and Paroles,* 431 F. 3d 896, 898 (6th Cir. 2005).

The Sixth Circuit suggested that the provisions of 28 U.S.C. § 2244(d)(1)(D) should be decided on a claim-by-claim basis, rather than with respect to all of the claims contained within the petition. *See Ege v. Yukins,* 485 F. 3d 364, 373-74 (6th Cir. 2007)(§ 2244(d)(1)(D) did not delay the commencement of the limitations period with respect to petitioner's ineffective assistance of counsel claim, but delayed the commencement of the limitations period for petitioner's due process claim, when the factual predicate of that claim was discovered at a later date); *See also DiCenzi v. Rose*, 452 F. 3d 465, 469-70 (6th Cir. 2006)(holding that statute of limitations on claim that state appellate court improperly denied a motion for delayed appeal under 28 U.S.C. § 2244(d)(1)(D) began on a different date than did the claims that related to issues that occurred at sentencing); *Jackson v. Hofbauer,* No. 2007 WL 391405, * 8

---

[3]  See Reply Brief, p. i, (Doc. # 11).

6

(E.D. Mich. January 31, 2007 (§ 2244(d)(1)(D) applied on a claim-by-claim basis).

The Supreme Court has not specifically addressed whether the provisions of 28 U.S.C. § 2244(d)(1)(D) should be applied to the entire habeas application or decided on a claim-by-claim basis.  However, in dicta in *Pace v. DiGuglielmo,* 544 U.S. 408, 416, n. 6 (2005), the Supreme Court indicated that § 2244(d)(1) provided one means of calculating the limitation period with regard to the "application" as a whole, namely, § 2244(d)(1)(A)(date of final judgment), but noted that the three other subsections, § 2244(d)(1)(B), § 2244(d)(1)(C), and § 2244(d)(1)(D), required a claim-by-claim consideration for calculating the limitations period.  This Court is required to evaluate each of petitioner's claims separately to determine whether the provisions of Section 2244(d)(1)(D) would render any, or all, of the claims timely.

In the present case, petitioner has raised nine claims in his original habeas petition and two claims in his amended habeas petition.  For the sake of brevity, these claims are: (1) the preliminary examination was not conducted within twelve days of the arraignment, (2) the prosecutor used perjured testimony from a key witness, Mr. Charles Smith, to secure the bindover, (3) the prosecutor violated the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) by withholding exculpatory evidence from witness Albert Brozowski identifying the driver of the murder victim's vehicle as being a white male, (4) the reasonable doubt instruction was defective, (5) the judge violated petitioner's right to

7

confrontation by preventing a police officer from testifying, (6) the prosecutor used Charles Smith's perjured testimony to secure a conviction, (7) ineffective assistance of trial counsel, (8) cumulative error, (9) ineffective assistance of appellate counsel, (10) petitioner is not guilty of first-degree felony murder, because the underlying felony of unlawfully driving away an automobile (U.D.A.A.) that he was charged with and convicted of is not an offense that would qualify as a predicate felony under Michigan law to support a conviction for first-degree felony murder, and (11) trial counsel was ineffective for permitting petitioner to be bound over for trial and allowing him to be convicted of first-degree felony murder on the basis of the underlying U.D.A.A.

With the exception of petitioner's third claim involving the prosecutor's alleged failure to turn over Mr. Brozowski's police report and witness statement and any related claims involving trial or appellate counsel's failure to raise this issue at trial or on direct appeal, the allegedly newly discovered evidence concerning Mr. Brozowski's police statement has no connection to petitioner's remaining claims.  Because petitioner's remaining claims do not rest upon the newly discovered evidence of Mr. Brozowski's statement to the police, this evidence cannot logically constitute a "factual predicate" for petitioner's remaining claims, as defined by § 2244(d)(1)(D), thus, these claims are time-barred, regardless of whether Mr. Brozowski's witness statement and the related police report would constitute newly discovered evidence with respect to petitioner's

8

third claim and his related ineffective assistance of counsel claims. *Ege,* 485 F. 3d at 373.

The main problem the Court has with invoking § 2244(d)(1)(D) to allow the one year limitations period to run from the date of the discovery of Mr. Brozowski's statement to the police is that petitioner failed to offer any evidence to support his claim that he only discovered the police report involving Mr. Brozowski's statement in September of 2011.  Petitioner is unable to invoke § 2244(d)(1)(D) to delay the start of the limitations period because his allegation that the factual predicate for his claims could not have been discovered sooner is unsupported and conclusory. *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003).  More importantly, petitioner does not offer any explanation how the factual predicate of his claim could not have been discovered earlier, nor does he indicate what steps, if any, he took to discover the factual basis for this claim.  Because petitioner failed to establish "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," petitioner does not meet his burden of establishing that Mr. Brozowski's statement was newly-discovered evidence which would delay the commencement of the one year limitations period. *See McSwain v. Davis*, 287 F. App'x. 450, 454-55 (6th Cir. 2008).

Moreover, assuming that petitioner could properly use § 2244(d)(1)(D) to delay the commencement of the one year limitations, his petition is still untimely.

9

Petitioner claims that he only discovered this police report in September of 2011. Petitioner did not file his first post-conviction motion for relief from judgment until March 30, 2012.  Giving petitioner the benefit of the doubt that he discovered this evidence on September 30, 2011, one hundred and eighty four days elapsed by the time that he filed his first post-conviction motion for relief from judgment.  A post-conviction application remains pending in the state courts, for purposes of § 2244(d)(2), until it "has achieved final resolution through the state's post-conviction procedures." *Carey v. Safford,* 536 U.S. 214, 220 (2002).  The tolling of the AEDPA's one year statute of limitations ended in this case when the Michigan Supreme Court denied petitioner's application for leave to appeal the denial of his motion for relief from judgment on July 30, 2013. *Hudson v. Jones*, 35 F. Supp. 2d 986, 988-989 (E.D. Mich. 1999).  Petitioner had one hundred and eighty one days remaining under the one year limitations period, which in this case would have been no later than January 27, 2014, to timely file his petition for writ of habeas corpus.  Because the petition was not filed until May 20, 2014, the petition is untimely even with respect to petitioner's *Brady* claim.

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. *Id.* at 649

(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." See *Robertson v. Simpson*, 624 F. 3d 781, 784 (6th Cir. 2010).  The burden is on a habeas petitioner to show that he or she is entitled to the equitable tolling of the one year limitations period. *Id.*  Petitioner is not entitled to equitable tolling of the one year limitations period, because he has failed to argue or show that the circumstances of his case warranted equitable tolling. *See Giles v. Wolfenbarger,* 239 F. App'x 145, 147 (6th Cir. 2007).

The one year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schlup v. Delo,* 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S. Ct. 192, 1928 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" *Id.*  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S., at 329).  Moreover, in determining whether petitioner makes out a compelling case of actual innocence, so as to toll the AEDPA's limitations period, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id.* (quoting *Schlup,* 513 U.S. at 332).  For an actual innocence exception to be credible under *Schlup*, such a claim requires a habeas petitioner to support his or her allegations of

11

constitutional error "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner's primary evidence in support of his actual innocence claim is Mr. Brozowski's statement to the Warren Police. Mr. Brozowski told the police that he was in his back yard when he heard two gunshots fired. Mr. Brozowski looked towards Sunset Street and observed a black or a dark blue Cadillac driving north on Sunset towards Toepfer Street. Mr. Brozowski indicated that the driver of the car was a white male, not a black man. Petitioner is African-American and claims that Mr. Brozowski's statement absolves him of the crime. [4]

The evidence in this case established that the victim was shot in front of his front yard on May 12, 1985 at approximately 7:40 a.m., by a man who stole his 1979 Blue Cadillac. Before the victim died, he managed to go inside and tell his boarder that he had been shot by a black man. (Tr. 10/2/85, pp. 101-06).

The murder victim's fifteen year old neighbor, Jennifer Peck, witnessed the shooting and identified the shooter as a tall black male wearing a dark blue jean jacket and a black glove. (*Id.*, pp. 56-57, 62-65, 68-69, 72-73, 77-79, 87, 90-91, 97-99).

At around 9:00 a.m., Charles Smith, an acquaintance of petitioner's,

---

[4] See Petitioner's Exhibit A attached to the petition for writ of habeas corpus and to the original reply brief.

12

witnessed petitioner driving a dark colored Cadillac through an alley at Seminole and Van Dyke Avenue in Detroit, Michigan. Petitioner stopped the vehicle, exited, and went into his girlfriend's house. Petitioner was wearing a blue denim jacket and no hat. Smith indicated that petitioner usually wore a black glove. (Tr. 10/3/85, pp. 237-46).

At about 10:15 a.m., two Detroit police officers saw the victim's car. The officers had already received a radio bulletin to be on the lookout for the victim's blue Cadillac. The car was parked on the southeast corner of Elgin and Van Dyke by a florist shop. (Tr. 10/2/85, pp. 152-54, 175, 207). The two officers waited about fifteen minutes before a man the two officers identified as petitioner exited the florist shop carrying a large box. One of the officers described petitioner as five feet ten inches to six feet, medium build, medium to dark complected, wearing a blue denim jacket and pants and with short matted down hair. Petitioner got into the victim's Cadillac. When the police went to stop petitioner, he put the car in reverse and backed down the street at high speed, striking three cars in the process. Petitioner exited the car and ran north between two houses. Petitioner was wearing a black glove and carrying a revolver. Petitioner was also wearing a blue hat. (*Id.*, pp. 155-58, 167, 172, 175, 190-91). One of the officers ordered petitioner to halt, who took off running. During his escape, the blue hat fell of petitioner's head. The police recovered this hat and a black glove from the yard where petitioner had taken off running. The hat was

13

identified as the type of hat that the victim kept in his car. (*Id.*, pp. 54-55, 167-71).

A flower box found in the victim's car had petitioner's fingerprints on it. (*Id.,* p.

232).  A mother's day card found in the car had handwriting on it that was

identified by a handwriting expert as being petitioner's. (Tr. 10/3/85, p. p. 412).

At about twelve minutes to noon, Charles Smith again encountered

petitioner at Milton and Van Dyke streets in Detroit, Michigan.  Petitioner pulled

up in a car and called a man over to the car and attempted to give him a .38

caliber pistol.  Petitioner told another man identified only as "Country" that he had

"just copped a honky," i.e. killed a white man.  Petitioner offered "Country" $

800.00 to get him out of town. (Tr. 10/3/85, pp. 247-252, 277, 293).

Petitioner was arrested on May 14, 1985, some fifty six hours after the

crime.  A corporeal line-up was conducted on May 16, 1985.  Ms. Peck did not

identify petitioner, but picked out another lineup participant because he had short

hair.  Prior to the lineup, petitioner used a comb to make his hair go upwards.

Petitioner was told twice to stop combing his hair but he still did it. (Tr. 10/2/85,

pp. 87, 89, 100; Tr. 10/3/85, pp. 367-71, 397).

Petitioner called his girlfriend Tina Powell, to testify as an alibi witness.  Ms.

Powell testified that petitioner was at her house between 3:00 a.m. and 9:00 a.m.

on late night and early morning of May 12, 1985.  Ms. Powell, however, admitted

that she was interviewed by police detectives on May 20, 1985, and told them

that she had spent Saturday night to Sunday morning on May 12th at her aunt's

14

house. (Tr. 10/4/85, pp. 487-93).

Petitioner testified in his own defense.  Although petitioner denied killing the victim, he admitted stealing the victim's Cadillac and being chased by the police. (*Id.*, pp. 546-51).

The overwhelming evidence in this case links petitioner to the victim's murder and the theft of his car.  The victim identified his assailant as African-American as did Ms. Peck.  Petitioner was observed driving the victim's Cadillac only a couple of hours after the murder.  When the police went to stop petitioner, he attempted to flee the scene in the victim's car, before escaping on foot. Petitioner later admitted to killing a white man.  By contrast, there was no evidence linking any white man to the murder of the victim or the theft of his car. Mr. Brozowski's statement identifying the driver of the victim's Cadillac is not compelling evidence of petitioner's innocence.  There is no evidence linking a white man to the victim's murder or the theft of his vehicle.  By contrast, there is a great deal of evidence linking petitioner to the murder.  The mere fact that Mr. Brozowski may have identified the driver of the victim's Cadillac as a white man is not compelling evidence of petitioner's actual innocence so as to toll the limitations period. *See e.g. Bell v. Howes*, 703 F.3d 848, 855 (6th Cir. 2012).

Petitioner also claims that his felony murder conviction was not supported by an enumerated felony under Michigan's felony murder statute.  Petitioner's claim is basically an insufficiency of evidence claim, which cannot be considered

15

by this Court in determining whether an actual innocence exception exists for purposes of tolling the statute of limitations period. *See Redmond v. Jackson,* 295 F. Supp. 2d at 773; *Grayson v. Grayson,* 185 F. Supp. 2d 747, 752 (E.D. Mich. 2002).

Petitioner's case falls outside of the actual innocence tolling exception, because petitioner has presented no new, reliable evidence to establish that he was actually innocent of the crime charged. *See Ross v. Berghuis,* 417 F. 3d 552, 556 (6th Cir. 2005); *Holloway,* 166 F. Supp. 2d at 1191.

### III.  Conclusion

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant.... If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues

16

satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)(internal quotes and citations omitted).

Having considered the matter, jurists of reason would not find the procedural ruling that the habeas petition is untimely and cannot be saved by statutory or equitable tolling debatable.  Accordingly, the Court declines to issue petitioner a certificate of appealability

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,*

17

208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of the habeas petition, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## IV.  ORDER

For the foregoing reasons, the Court concludes that the habeas corpus petition was filed outside the one-year limitations period prescribed in 28 U.S.C. § 2244(d)(1)(A).  Accordingly, **IT IS ORDERED** that Respondent's Motion to Dismiss (Doc. # 18) is **GRANTED**  and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner shall be **GRANTED** leave to appeal *in forma pauperis.*


s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:  March 6, 2017

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 6, 2017, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Assistant

18